Argued October 5; affirmed November 9, 1933

# YOUNGER *v.* GALLAGHER ET AL.

(26 P. (2d) 783)

*L. A. Recken,* of Portland (Senn & Recken, of Portland, on the brief), for appellant.

*Earl F. Bernard,* of Portland (Collier, Collier & Bernard, of Portland, on the brief), for respondent.

BAILEY, J. The appellant's brief contains three assignments of error, to wit: (1) that there was insufficient evidence of negligence on the part of the defendant to prove that the accident was caused by his gross negligence or his reckless disregard of the rights of others; (2) that the court should have held as a matter of law that the plaintiff and the defendant were protected by the workmen's compensation law and that plaintiff's sole remedy was a recovery from the state under the provisions of that law; and (3) that the court erred in refusing to instruct the jury that if it found certain facts to have existed, plaintiff would be entitled to recover compensation from the state of Oregon.

■ The first question which presents itself is whether or not plaintiff's injury arose out of and in the course of his employment with the city of Portland. If that question should be answered in the affirmative, the judgment would have to be reversed, as the city, so far as plaintiff's employment was concerned, was under and subject to the workmen's compensation law of this state.

A few days prior to the accident the plaintiff and the defendant F. R. Gallagher (hereinafter referred to as the defendant), two of the many unemployed of the city of Portland, were instructed to report for work at 8 a. m. on November 9, 1931, the day before the accident, at Kirby and Stanton streets, the location of the

city barns or shops, where much of the equipment used by the day laborers on civic relief work was kept. The plaintiff was to perform manual labor, while the defendant was engaged as a truckman, furnishing his own motor vehicle. On that morning the defendant reported at Stanton and Kirby streets with a one and one-half ton Chevrolet truck and was instructed to carry some of the workmen there assembled to a place on the extension of Fourth street in the city of Portland, where work was being done by the city in the construction of a new highway. A large number of other workmen, including the plaintiff, reporting the first time for assignments, were thus furnished transportation by the city to the various projects to which they were assigned. After being transported by the city the first day of their employment, to these projects, the workmen were thereafter required to find their own means of transportation to and from work.

The plaintiff and the defendant were assigned work on the Fourth street extension near Slavin road at a point about one mile to a mile and a half westerly of the intersection of Slavin road and Corbett street. There were, at this time employed on this project, from 150 to 200 workmen and only two trucks, including the defendant's.

On the second day, that of the accident, November 10, the plaintiff took a street car to Corbett street and Slavin road, which was the nearest point to the work reached by any street car service, and walked the rest of the distance, and the defendant drove his truck direct from his home. The men on the project were expected to work until 4:30 p. m. On that day the foreman, according to defendant's testimony, ordered the

workmen to quit at about 4:15 p. m. because there was not enough time left before 4:30 to "make another load".

During the afternoon of November 10, Mr. Plowden, the foreman in charge of the work, said to the two truckmen: "Any one that lives in your section of town, take them down with you." When the defendant started home on that day he found Mr. Plowden and the plaintiff standing at the intersection of the Fourth street project and Slavin road, and Mr. Plowden told the plaintiff to get in and "ride down" with the defendant, and at the same time said to plaintiff: "You are too old a man to walk down that hill."

The defendant testified that it was the custom for city employees on relief work to report on the first morning at Stanton and Kirby streets for instruction as to where to go, and to be furnished transportation by the city on the first morning from the assembling place to where they were to work, and thereafter to go direct from their homes to the work; that he was paid $1.25 an hour to haul dirt, and that, so far as he knew, he was not hired or paid to take the men to and from work, except that he was told on the first morning to go to Stanton and Kirby streets and "take this load of men out". This testimony of the defendant was not controverted.

On his way home from work on the day of the accident the defendant had five men with him in his truck; and the other truck, a Dodge, was carrying about the same number of workmen. The other men working on this project either walked to their homes or to the nearest street car lines, unless they had their own automobiles or procured rides in one another's private

cars. There was no attempt on the part of the city to furnish transportation to any of these workmen to and from work, except on the first morning. What the foreman said to the two truck drivers who were using their own motor vehicles on this relief work was merely a suggestion or request on his part, and can not be said to indicate an intention on the part of the city to furnish transportation to some eight or ten men out of the 150 to 200 employed on the project. Before plaintiff would be entitled to compensation under the workmen's compensation act, he would be required to prove that the injury which he suffered arose out of and was received in the course of his employment: *Larsen v. State Industrial Accident Commission,* 135 Or. 137 (295 P. 195).

The plaintiff was employed to do manual labor on the new highway which was being constructed by the city of Portland. The injury which he suffered did not arise out of the work which he was performing on this road. It was received by him after his day's work was done, while he was on his way home, and was not sustained in the course of his employment. The motor vehicle in which he was riding at the time of the accident was not owned by the city, nor was the operator thereof acting in the course of his employment with the city at that time. The owner of this truck was paid by the city to haul dirt and was not employed or paid for transporting the employees to their homes from work.

The fact that the workmen on this project were permitted to quit work on the day of the accident a few minutes before the regular quitting time because they did not have enough time before 4:30 p. m. to "make another load" would no more entitle the plaintiff to

compensation from the state for the injuries which he sustained, even if the accident actually happened before 4:30 p. m., than if they had not stopped work until 4:30 p. m.

The authorities cited by the appellant in support of his contention that the injuries suffered by the appellant arose out of and were received in the course of his employment involve facts materially different from the facts in this case, and are not in point here.

The circuit court committed no error in holding that the plaintiff was not protected by, or limited to recovery under, the workmen's compensation act.

Section 55-1209, Oregon Code 1930, provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

■ Can it be said as a matter of law that the accident in which plaintiff was injured was not caused by defendant's gross negligence or his reckless disregard of the rights of others? In passing upon this question it is necessary to consider the evidence in the case most favorable to plaintiff.

The accident occurred on Slavin road within the corporate limits of Portland, some 200 to 400 feet west of the intersection of that road and Corbett street. Slavin road runs in a westerly direction from Corbett street and is used principally by trucks going to and from the business part of the city. The roadbed is

oiled macadam, 18 feet wide, and at that time the surface was damp. Some 1,200 feet west of the intersection of Corbett street and Slavin road there is a bridge on the road. Between the bridge and Corbett street the road is winding, with numerous successive curves, and at no place on that stretch of road is there a clear and unobstructed view of the highway for 500 feet. From a point over 400 feet west to within 200 feet of the intersection the road is curved and cut through the side of a hill, so that on the left-hand side coming toward Corbett street there is a rather steep embankment which obstructs the view of vehicles approaching from the opposite direction.

Immediately prior to the accident the defendant, with the plaintiff and four other workmen in his truck, was coming into the city over this highway. When he left the easterly end of the bridge, the Dodge truck which had been employed on the Fourth street project was proceeding in the same direction, some 100 feet ahead of defendant's truck. After turning the sharp curve at the easterly end of the bridge the defendant started in pursuit of the Dodge truck and overtook it about 400 feet east of the bridge and approximately 800 feet west of Corbett street. From that point on, the two trucks raced side by side over this winding road at a speed of 35 to 40 miles an hour, for about 400 feet, to the turn of the highway to the right through the embankment above mentioned. The defendant was driving his truck on the left side of the road and at this point his range of vision of approaching cars was only about 50 or 60 feet, whereas the driver on the right side of the road could see approaching cars for 100 feet or more. Here, approximately 400 feet west of Corbett street, a milk truck being driven westerly

on the right-hand side of the road suddenly came into view about 50 or 60 feet in front of the defendant, which caused him to swerve his vehicle sharply to the right, in front of the Dodge truck, barely missing that truck and the approaching milk truck, and then to the left, in an attempt to keep the wheels of his truck on the pavement. In doing this, the right rear wheel of his truck went off the pavement on to the shoulder of the road, the truck swung across the highway and skidded at an angle of about 45 degrees along the pavement, some 78 feet, overturned and thereby caused plaintiff's injuries.

While racing around the curve and before seeing the approaching vehicle, the plaintiff shouted: "We are in for it and I am going to jump." He had been sitting in the rear of defendant's truck, behind the driver's cab, and after calling out in alarm he stood up and then saw the approaching milk truck. That was the last that he remembered of the details preceding the accident.

The evidence shows that he did not jump, but was thrown clear of the vehicle and upon the pavement. There is no question raised on this appeal as to the seriousness of the injuries sustained by plaintiff, or the amount of damages awarded him by the jury.

The following provisions of chapter 360, Oregon Laws 1931, are especially applicable to this case:

"Section 19 (a) Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving * * *.

"Section 20 (a) *Basic Rule.* No person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to the traffic, surface and width of the highway and the hazard at intersections and any other conditions then existing.

"Section 23 (c) No motor truck, when equipped with pneumantic tires, shall be operated or moved over or upon the public highways, roads or streets of this state at a speed in excess of thirty-five (35) miles per hour.

"Section 26 (a) Upon all highways of sufficient width, other than one-way highways, the driver of a vehicle shall drive the same upon the right half of the highway except when the right half is out of repair and for such reason impassable or when overtaking and passing another vehicle subject to the limitations set forth in section 30.

"Section 30 (a) The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without impeding the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken, nor shall the driver of a vehicle in any event drive to the left side of the center line of a highway when approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of five hundred (500) feet." .

This court has in a number of cases defined gross negligence as that term is used in section 55-1209, supra; *Storla v. S. P. & S. Transportation Co.*, 136 Or. 315 (297 P. 367, 298 P. 1065); *Rauch v. Stecklein,* 142 Or. 286 (20 P. (2d) 387); *Cockerham v. Potts,* 143 Or. 80 (20 P. (2d) 423); *Hartley v. Berg,* ante, page 44 (25 P. (2d) 932).

In the case of *Rauch v. Stecklein,* supra, Mr. Justice Rossman, after reviewing authorities, defined gross negligence in the following language:

"Thus, gross negligence is conduct which indicates an indifference to the probable consequences of the act. A motor host who drives in a manner which indicates that he has no concern for consequences and an indifference to the rights of others is said to be guilty of gross negligence. The injury which he inflicts is not entirely inadvertent. His mental qualities, therefore, differ from those of another who is guilty of only ordinary negligence. The condition of mind of the driver who plunges on ahead, grossly negligent of the rights of others, may not be such that we can say that his tortious acts are wilful or wanton, but his mind is at least indifferent to the rights of others or displays those rash qualities exhibited by the foolhardy."

In the case at bar there was evidence from which the jury might have found that the defendant was driving his truck "without due care and circumspection and at a speed" and "in a manner so as to endanger or be likely to endanger" the lives of his passengers and other individuals using the highway; and that he was driving at a speed prohibited by law, and on the left-hand side of the highway where his "view along the highway" was obstructed within a distance of a few feet. The jury was also warranted in finding that the defendant's conduct indicated an indifference to the probable consequences of his act.

■ As there was evidence from which the jury might find, or reasonably infer, that the accident was caused by defendant's gross negligence or his reckless disregard of the lives of others, no error was committed by the trial court in submitting that question to the jury. The judgment appealed from is affirmed.

Rand, C. J., Bean and Campbell, JJ., concur.