Argued October 12, reversed November 23, petition for
rehearing denied December 21, 1955

# WHANG *v.* HONG

290 P. 2d 185
291 P. 2d 720

*W. H. Morrison,* of Portland, argued the cause for appellant. With him on the brief were Howard K. Beebe, Maguire, Shields & Bailey, of Portland.

*John H. Buttler,* of Portland, argued the cause for respondent. With him on the brief were Cake, Jaureguy & Hardy, of Portland.

Before WARNER, Chief Justice, and ROSSMAN, LATOURETTE and PERRY, Justices.

LATOURETTE, J.

Y. K. Whang, in his individual capacity, recovered a judgment of $15,580.00, against Arnold Emil Houglum and John Hong for loss of services occasioned by the death of his nine year old son, Lynne Whang. Defendant John Hong appeals.

The death resulted from a collision of the automobiles of Houglum and Hong at the intersection of two roads East of Portland near Gresham. The minor child was riding as a guest passenger with his uncle, defendant Hong.

In his complaint, plaintiff charges Hong with gross negligence in the operation of his automobile. The first question raised is whether or not the evidence adduced discloses gross negligence on the part of Hong. At and before the point of collision, defendant Hong was traveling in a Westerly direction while Houglum was traveling in a Southerly direction. The collision occurred in broad daylight at an intersection. While approaching the intersection, Hong's view to the North from whence Houglum's car was coming was somewhat obscured by a house and some trees until he was within 20 to 25 feet of the intersection.

There were five witnesses called whose testimony bore on the collision. A summary of their testimony having a bearing on the question follows: Houglum, called by plaintiff as an adverse witness, testified that he was driving Southerly on the highway through the intersection at a speed from 25 to 30 miles per hour. He had an unobstructed view to the right for a distance of 500 feet and did not look to his left until he saw the Hong car out of the corner of his eye five or six feet in front of him. He testified that he was on the right side of the road, that his left front fender hit

Hong's car right ahead of the right front door and that he did not apply his brakes.

Plaintiff called Hong as an adverse witness. He testified that he was conversant with the intersection and that he reduced his speed some 225 feet from the same where there is a dangerous intersection sign to about 30 to 35 miles per hour and continued such speed until the point of collision. When he was 20 to 25 feet from the intersection, he looked up the road to his right and saw Houglum's car 75 feet away from the intersection and did not observe it again until the point of the accident. The intersection on the course which Houglum was traveling was 19.4 feet wide, the paved portion being 10 or 12 feet wide. He attempted to clear the intersection before Houglum's entry and was practically through it when the collision occurred. He testified that the Houglum car was traveling 50 or 55 miles per hour, that the intersection was graveled, and that he saw he couldn't stop so he figured that if he could get on across he wouldn't be hit.

Plaintiff called Fred H. Heitzman, a farmer who lived at the Southwest corner of the intersection. He testified that he saw the Houglum car coming 200 feet away from the intersection and watched it to the point of collision. He testified that the Houglum car was traveling from 40 to 45 miles per hour without cessation of speed up to the point of impact. He further testified that he saw the Hong car come into the intersection traveling at 25 to 30 miles per hour and that it practically was out of the road when the collision occurred.

Defendant Houglum called his wife as a witness. She testified that she was riding with her husband at the time of the accident, that they were traveling

from 25 to 30 miles per hour, and that she did not see Mr. Hong's car before the collision.

Walter H. Jahn, the deputy sheriff who visited the scene of the accident a few minutes after its occurrence, was called as a witness by defendant Houglum. He testified as to the position of the two cars after the accident. As to the Hong car, he said it was approximately 25 feet West of the Southwest corner on the South side of the road facing East. He said that Hong told him that "he was going West on Hillyard Road about 35 miles an hour, saw Car No. 1 (Houglum's Car), but thought he was going to stop, and continued right on".

There has been a great deal written about what constitutes gross negligence. It is a nebulous term. No yardstick can be laid down fitting every case. Whether gross negligence applies in a given case depends upon its own particular facts and circumstances. It is often difficult for a trial judge in the heat of a judicial controversy to evaluate the evidence so as to fit it into its proper category.

A scholarly discussion of the question presently before us, with an analysis of the cases, is found in the opinion of Mr. Justice ROSSMAN written for the court in *Keefer v. Givens*, 191 Or 611, 232 P2d 808. We quote:

"It is clear that inadvertence, thoughtlessness, brief inattention, error in judgment and momentary loss of presence of mind do not constitute the basis for a finding of gross negligence. The conduct must manifest indifference to the safety of those who entrusted themselves to the defendant's driving. It will be noticed that the indifference is generally revealed by conduct of a continuing kind, as distinguished from something which happened

without the volition of the defendant rather quickly.''

■ Viewing the evidence in the light most favorable to the plaintiff, within the rule above set out, we do not think the evidence before us indicates more than ordinary negligence on the part of Hong. There is no evidence of any negligence on his part prior to his arrival at a point 50 feet from the intersection where the indicated speed would be 20 miles per hour, notwithstanding plaintiff's claim that had defendant looked to his right some 150 feet from the intersection he could have caught a glimpse of about 50 feet of the road on which Houglum was traveling. There is no evidence that Houglum's car was within that space when the defendant passed that point. Therefore, the negligence of Hong was not of a continuing kind. The accident happened rather quickly at the intersection. Hong was in a dilemma. He could have put on his brakes, but had he done so, on account of the graveled condition of the highway, he undoubtedly would have skidded and hit the Houglum car broadside. He chose the other course with the thought that he could cross the intersection before Houglum's car reached the same. He had the right to assume that in the exercise of due care Houglum would slow down in the last 50 feet before entering the intersection to the indicated speed of 20 miles per hour. Had Houglum so reduced his speed, there obviously would have been no collision. The most that could be said is that he erred in judgment in proceeding across the intersection when he noticed the Houglum car 75 feet away.

It is the contention of plaintiff that even though we should find that there was no gross negligence on the part of Hong, plaintiff should still be permitted

to recover for ordinary negligence. The question posed is whether or not under the state of the law plaintiff may recover for the death of his son.

ORS 30.110 reads as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against the owner or operator for injury, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

Since the son could not have recovered, had he lived, for any damages he might have sustained on account of the collision by reason of the above statute, does this fact preclude the father's recovery?

ORS 30.010, on which plaintiff predicates his cause of action, reads as follows:

"A father, or in case of his death or desertion of his family, the mother, may maintain an action for the injury or death of a child, and a guardian for the injury or death of his ward."

Construing the above statute in *Schleiger v. Northern Terminal Co.*, 43 Or 4, 72 P 324, we said:

" * * * If, therefore, the child's death ensues through the wrongful act of another while occupying that relation, the parent may sustain a pecuniary loss by reason of being deprived of his services, and perhaps in some other form, peculiarly his own, and entirely distinct from any that may have been sustained by the minor or his estate in the event of his death * * *."

It is a general rule that if a child may not recover in a tort action, the parent's cause of action is de-

feated. Quoting from 39 Am Jur, Parent and Child, p 727, § 81, we read:

> "Since, except where the action is for employment without the parent's consent, the parent's cause of action arises out of the injury to the child, an act or omission which would not support an action by the child will not furnish a ground of action by the parent. Thus, the parent's action is defeated if the child was guilty of contributory negligence. The parent takes his right of action subject to any defense that could be urged against the child, in whom the whole cause of action, but for the law, would vest. * * *." See annotation 42 ALR 717.

And again in 67 CJS 741, Parent and Child, § 41, we read:

> "In the absence of a statute restricting the right to sue, where a minor child is injured by the wrongful act or omission of another, the parent ordinarily has a right of action for loss of services of the child and other pecuniary damages sustained by him in consequence of such injury, at least where there is the usual relationship in which the parent exercises his right to the child's services and performs his duty to support it. The right of the parent to recover for loss of services, etc., depends on the right of the child to recover for his injuries, and where there is no breach of duty entitling the child to recovery the parent ordinarily has no right of action; * * *."

Quoting from Professor Prosser's estimable treatise on torts, page 944, we read:

> "From this the courts generally have concluded, by reasoning which remains rather obscure, that the action of the husband or parent will be defeated by defenses which would bar that of the wife or child. Thus contributory negligence or assumption of risk on the part of the injured person, or a statute of limitations applicable to him has been held to defeat the recovery, * * *."

■ We have recognized the principle in the case of *Boyd v. Portland Electric Co.*, 40 Or 126, 66 P 576, that contributory negligence of an injured minor child may defeat the father's cause of action to recover damages for loss of services. In that case the father sued the electric company for damages alleged to have been suffered by him on account of his minor son's coming into contact with a live electric wire. One of the defenses was contributory negligence of plaintiff's son. The company submitted certain instructions on the subject of contributory negligence which the court refused to give, but we said, "that phase of the question was fully covered by the general charge, and there was no error in such refusal".

In 42 ALR 712, this matter was considered in the lead case of *Callies v. Reliance Laundry Company*, 188 Wis 376, 206 NW 198, where the court said that a mother has no right of action for negligent injury to her minor child where he was guilty of negligence contributing to the injury. Quoting from that opinion, we read:

"* * * If the minor is guilty of contributory negligence neither minor nor parent can recover, for their rights spring out of the same transaction —the same cause of action. The parent takes by operation of law a part of the child's cause of action and he must take it as the child leaves it. For the reasons stated growing out of the relation, the law assigns to the parent a part of the cause of action, and he takes it subject to any defenses that could be urged against the child, in whom the whole cause of action, but for the law, would vest."

■ The Supreme Court of Errors of Connecticut, in *Shiels v. Audette*, 119 Conn 75, 174 A 323, held that a parent can not recover for loss of services brought about by an injury to the child while riding as a guest

in defendant's motor truck where the guest statute precludes the child himself from recovering for such injury. See 94 ALR 1206. This case is quite significant because as stated in *Storla v. S., P. & S. Trans. Co.*, 136 Or 315, p 322, 297 P 367, "The Connecticut rulings are peculiarly important because the guest statute of that state very likely inspired the Oregon law.". The construction placed upon the Connecticut statute by the Connecticut Court should have very great weight with us. *City of Portland v. Duntley*, 185 Or 365, p 389, 203 P2d 640.

In *Upchurch v. Hubbard*, 29 Wash2d 559, 188 P2d 82, the parents of a minor son brought an action under Rem. Rev. Stat., § 184, which corresponds to ORS 30.010, for the death of their son against an operator of a motor vehicle upon which the son was riding as a guest.

We find the following language in the above decision:

> "A limitation upon such independently created right, recognized by this court and elsewhere generally, is that the wrongful act or default must be of such character as would have entitled the injured person to maintain an action and recover damages, had not death ensued; stated conversely, if the deceased never had a cause of action, no right of action accrues under the wrongful death statute. 16 Am. Jur. 61, Death, § 82, Ryan v. Poole, supra."

■ It is asserted that since ORS 30.020 gives a right of action for wrongful death to the personal representative of the decedent "if the decedent might have maintained an action, had he lived, against the wrongdoer for an injury done by the same act or omission", and since ORS 30.010 omits the above quoted language, the court would have to read into ORS 30.010 the above

quoted language, if it were to deny a recovery by the parent if the child could not have recovered had he lived, which it is claimed is contrary to established rules of statutory construction. In our opinion, such is not the case. By referring to Deady's Code of 1862, it will be found that Section 33, Title III of Chapter I of that code now appears as ORS 30.010 and Section 367, Title VI of Chapter IV of that code now appears as ORS 30.020. It will be noted that the above sections are found in different chapters of Deady's Code and have no relation to each other. This is borne out by the language of this court in *Schleiger v. Northern Terminal Co.*, supra, as follows:

"* * * All these sections were adopted in 1862, and are a part of the act 'to provide a Code of Civil Procedure' and naturally were intended to subserve a harmonious purpose, without impinging one upon the other."

As hereinbefore pointed out, the courts in various jurisdictions, including our own, as indicated in the case of *Boyd v. Portland Electric Co.*, supra, have uniformly held that all defenses which would lie against the child had he lived are available against the parent when pursuing his cause of action. Such a defense at common law was recognized where a parent sued for the loss of services of his child where death did not ensue. See Beach on Contributory Negligence, 2d ed. § 131 and § 132. ORS 30.010 merely preserves the common law right of action in the parent where a child is injured and creates an additional right in the parent when the child dies.

It would be an anomaly indeed if the parent could recover for loss of services if the child had died but could not recover if the child had lived.

Nor does the language found in ORS 121.010, which provides that:

"A cause of action arising out of an injury to the person dies with the person of either party, except as provided in ORS 30.020 * * *; but the provisions of ORS 30.020 * * * shall not * * * defeat or prejudice the right of action given by ORS 30.010."

alter the situation.

■ Section 365, Title VI of Chapter IV of Deady's Code, which now appears as ORS 121.010, was enacted in our opinion, to make certain that the right of the parent to pursue the action for the wrongful death of a child, as given by Section 33, Title III of Chapter I of the code, would be preserved.

■ In view of the foregoing, it was error for the court to refuse to direct a verdict in favor of the appealing defendant.

Reversed with instructions to enter judgment in favor of defendant Hong.

ON REHEARING

ON PETITION FOR REHEARING

*W. H. Morrison,* of Portland, and *Howard K. Beebe, Maguire, Shields & Bailey,* of Portland, attorneys for appellant.

*John H. Buttler,* of Portland, and *Cake, Jaureguy & Hardy,* of Portland, for petition.

Before WARNER, Chief Justice, and ROSSMAN, LATOURETTE and PERRY, Justices.

LATOURETTE, J.

■ In plaintiff's petition for rehearing we are told, in effect, that had we followed the case of *Cockerham v. Potts,* 143 Or 80, 20 P2d 423, we would have been compelled to affirm the trial court on the gross negligence question. The brief states:

"If, in the calm of appellate judicial consideration, this Court can validly distinguish the instant case from Cockerham, we invite the Court to do so. If a valid distinction cannot be made, respondent submits that the judgment below must be affirmed or Cockerham must be overruled. In any event, Cockerham v. Potts, may not be completely ignored."

In the opinion handed down we stated:

"* * * Whether gross negligence applies in a given case depends upon its own particular facts and circumstances."

It was our view that the facts and circumstances of the Cockerham case were so entirely different from the facts in this case that it was not necessary to distinguish the two. In the Cockerham case it is stated:

"* * * the Lorett car approached the intersection at a rate of speed of 25 miles per hour on the wrong or left side of the road and very close to the edge of the graveled road; that she proceeded on to the Dayton-McMinnville highway intersection at a speed of more than 15 miles per hour, going north of the intersection and on the Dayton-McMinnville highway on the left side of that highway, without any care or caution, without looking for traffic or cars on the Dayton-McMinnville pavement, when she could and should have approached the intersection on the right side of the graveled road, and if she had done so in a cautious manner she could have been seen and avoided by Potts; that she could and would have seen the Potts car for a distance of approximately 45 feet away when she reached the pavement; that if she had had the Ford car under proper control, the collision could have been avoided, and that she was grossly reckless and negligent, and entirely failed to observe the ordinary rules and dangers of the road. Nowhere in the record can we find any testimony indicating that Miss Lorett exercised any ordinary care. She evidently thought that there was no traffic on the Dayton-McMinnville highway at that time and place and that it was not necessary to use any care."

From the above it will be seen that the defendant approached the intersection on the wrong side of the road, cut the corner and proceeded Northerly on the left side of the Dayton-McMinnville highway directly into the path of the oncoming car, without ever seeing it until the point of collision, or without using any care whatsoever.

In the case presently before us, defendant Hong was on the right side of the road throughout the course of his travel and slackened his speed some 225 feet away from the intersection at the warning sign to between 30 and 35 miles per hour. When he was within 25 feet of the intersection he looked to the North and saw the Houglum car coming some 75 feet away and thought he could cross the intersection before the Houglum car reached the same.

The distinction between the two cases is obvious.

We have considered the other matters raised in the petition and are of the opinion that the result reached is correct.

Petition denied.