BRECKENRIDGE *v.* ARMS.

1. NEGLIGENCE—WILFUL AND WANTON MISCONDUCT.

There is no exact standard or measurement by which it may be determined where negligence ends and wilful or wanton misconduct begins and each case must be decided on its own facts.

2. AUTOMOBILES—GUEST PASSENGERS—WILFUL AND WANTON MISCONDUCT.

In action by next friend of guest passenger who was being driven home from a dance by son of defendant in latter's car at speed of 40 to 45 miles an hour when car collided with tree off left side of road after he had taken his right hand off the steering wheel and bent his head down under the cowl when he diverted his attention from the road ahead to repair of the accelerator, driver *held*, not guilty of wilful and wanton misconduct within meaning of guest passenger act (1 Comp. Laws 1929, § 4648).

FEAD, C. J., and NORTH, J., dissenting.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted January 15, 1937. (Docket No. 98, Calendar No. 39,310.) Decided April 21, 1937.

Case by Betty Breckenridge, by Genevieve Breckenridge, her next friend, against Lyle Arms for personal injuries received while a guest passenger in defendant's automobile. Verdict and judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*Ronald M. Ryan,* for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendant.

BUSHNELL, J. The controlling question in this appeal is whether William Arms, the driver of defendant's automobile, was guilty of "gross negligence or wilful and wanton misconduct" within the meaning of these words as found in the so-called guest statute, 1 Comp. Laws 1929, § 4648.

The acts complained of and upon which plaintiff obtained a judgment of $3,000 are correctly and concisely stated in appellant's brief, but we prefer, on account of our view of their effect, to give plaintiff's version. We therefore quote from appellee's counter-statement of facts:

"Defendant's son was driving plaintiff home from the dance on a cement highway known as the Stony Lake road, a main highway which leads into west Michigan avenue, a main trunkline highway running east and west from the city of Battle Creek. Said driver was proceeding along said Stony Lake highway at about 40 or 45 miles per hour on his right side of the highway. There was a slight mist and

the windshield wiper was not working. The pavement was slightly wet but not slippery. When the automobile was approximately a mile from the place of accident, the driver noticed that a rubber cover on the accelerator of the car was getting loose and coming off. It was not clear off but the corner was coming out and kind of peeling down. He did not do anything about it at first. There were cars coming from both directions and the road was winding. When the auto was approximately two miles northwest from the junction of said Stony Lake road and west Michigan avenue the car started to go around a curve. When the car was about three-quarters of the way around the curve the driver, without stopping or slowing down, removed his right hand from the steering wheel and reached down to the accelerator on the floor of the car and attempted to repair it or to properly place it on the accelerator, but was unable to put it on. He then took his eyes off from the road ahead of him and bent his head down under the cowl and attempted to put it on. He kept his left hand on the wheel with his head bent down in order that he might see the pad on the accelerator under the cowl of the car, where he was working with his right hand. The car continued on the right side of the road for some distance and then crossed over to the left side of the road, went out onto the gravel shoulder, and finally collided with a tree. The car traveled about 1,000 feet after the driver bent his head down under the cowl to fix the pad on the accelerator to when the auto collided with the tree. The driver did not raise his head or notice in which direction the car was traveling until he heard the noise of the wheels on the gravel shoulder of the left side of the pavement. At that time he saw the tree right in front of him not more than eight or ten feet away. The driver testified that he then put on his brakes and turned his wheel to the right but there was not sufficient time to avoid the accident.''

"There is no exact standard or measurement by which we may determine where negligence ends and wilful or wanton misconduct begins and each case must be decided on its own facts." *Goss* v. *Overton,* 266 Mich. 62, 65.

The judgment must be vacated because the facts do not show either wilful or wanton acts on the part of defendant's driver.

The judgment is vacated without a new trial. Costs to appellant.

WIEST, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred with BUSHNELL, J.

FEAD, C. J. (*dissenting*). Under the testimony most favorable to plaintiff, defendant's son was not merely inattentive or careless in his driving but intentionally drove a considerable distance without being able to see the road and in a position which made it certain, or at least extremely probable, that he could not hold the car on its course around the curve. A jury would be justified in finding that any reasonable person would have anticipated grave · danger from such driving and that defendant's son wilfully drove in a manner fraught with peril and in reckless disregard of consequences. In my opinion, the testimony presented an issue of fact on gross negligence.

The other claims of error are untenable and need no discussion.

Judgment should be affirmed. .

NORTH, J., concurred with FEAD, C. J.