Argued April 20, reversed June 22, petition for rehearing denied
August 10, 1960

# WILLIAMSON *v.* McKENNA

354 P. 2d 56

*C. Parker Gies* argued the cause for appellant. On the brief were Lewelling & Gies, Salem.

*Karl T. Huston* argued the cause for respondent. On the brief were Huston, Thomas & Johnson, Corvallis.

Before MCALLISTER, Chief Justice and ROSSMAN, WARNER, PERRY, O'CONNELL and GOODWIN, Justices.

O'CONNELL, J.

This is an action brought by a guest passenger against the owner and operator of an automobile to recover damages for personal injuries resulting from an accident which occurred on Highway 99W just north of McMinnville. The jury returned a verdict for the defendant, whereupon plaintiff moved for an order granting a new trial which was granted. Defendant appeals from that order.

The accident occurred at approximately three o'clock on the afternoon of July 26, 1955. Defendant was proceeding in a southerly direction on Highway 99W when his automobile collided with an automobile driven by Seth Bellwood, Jr., who was travelling in a northerly direction. The accident occurred near a point on Highway 99W where it is intersected by a secondary highway referred to as Lafayette Avenue which forks off to the south forming an irregularly shaped "Y", with Highway 99 constituting the leg and right arm of the "Y" in one continuous straight line at the point of intersection. The traffic sign near the

intersection showing the direction of various towns indicates that Lafayette Avenue, the south fork at the intersection, leads to Salem. The sign was located in the triangular area between the two arms of the "Y" formed by the intersecting highways.

Mr. Bellwood testified that as he was proceeding north along Highway 99W, defendant turned to the left directly in front of the Bellwood car. Defendant's movement was made to get into Lafayette Avenue. No signal of an intention to turn was given. Defendant did not see the Bellwood car until just before the collision. He stated that he had no explanation why he did not see the approaching car. Plaintiff did not see the approaching car either.

Highway 99W is straight and level for approximately a quarter of a mile north of the intersection and approximately one mile south of the intersection. There were no vehicles on the highway between defendant's and Bellwood's cars as they approached each other.

Defendant and plaintiff had been visiting plaintiff's daughter at Forest Grove. On their return, as they were approaching the intersection, they were discussing whether they should go to Corvallis, where plaintiff lived, or go on to Salem. Apparently at the time defendant made the turn it had not yet been definitely decided that they would go to Salem. Neither was familiar with the highway system in the area. As they approached the intersection plaintiff and defendant were attempting to read the road sign in the triangular area formed by the intersection to determine which road to take in order to be enroute to Salem. While plaintiff was still trying to make out the legend on the road sign defendant suddenly turned

to the left toward the entrance to Lafayette Avenue and thereupon the collision occurred.

Defendant moved for a directed verdict on the ground that there was no evidence of gross negligence as required by the guest statute, ORS 30.110. The motion was denied and the case was submitted to the jury which returned a verdict for the defendant. Upon this appeal from the order granting a new trial defendant assigns as error the court's failure to direct the verdict as requested. Therefore, we are called upon once more to determine whether specific conduct is such that a jury could describe it as gross negligence under the guest statute.

It is evident from the conflicting opinions expressed in the recent cases of *Secanti v. Jones,* 223 Or 598, 349 P2d 274 and *Burghardt v. Olson,* 223 Or 155, 349 P2d 792, both decided in department, that this court was not in agreement as to the circumstances under which our guest statute, ORS 30.110 should be applied. Realizing this the court set for reargument both these cases together with several other cases involving the application of the guest statute, with the object of making a thorough re-examination of the law under the statute in the hope that our differences in view could be reconciled and that a more definitive and clearer statement of the court's position could be reported.

Because of the volume of litigation in this area of automobile law it is imperative that we provide the clearest possible formula for the treatment of this class of cases so as to provide a workable guide for the bar and the trial bench. To borrow the language of Mr. Justice Brandeis, "it is more important that the applicable law be settled than that it be settled right." *Burnet v. Coronado Oil & Gas Co.,* 285 US 393, 406, 52 S Ct 443, 76 L Ed 815 (1932).

Stated broadly, our task is to interpret ORS 30.110 and specifically the language "gross negligence or * * * reckless disregard of the rights of others." Basically, our problem is to formulate a useable test by which we, as well as the trial judges and juries, will be able to determine with reasonable accuracy and consistency whether the host's conduct in a particular case is sufficiently culpable within the meaning of the guest statute to permit recovery. Since we are dealing here with a question of the quantum of fault it is obvious that we cannot expect to find a rule or standard that can be applied with any precision; the most that we can hope for is a clear statement of the factors or elements which must characterize the host's conduct in order to permit recovery.

Misconduct may be conceived as ranging in infinite gradations from the slightest inadvertence to the most malicious purpose to inflict injury. See the concurring opinion in *Bughardt v. Olson*, supra. From a philosophical standpoint, perhaps one can say only that fault is but a single concept and that the differences cannot be grouped in categories. But the law, at least, marks out a few large divisions on the scale which seem to have some utility in deciding cases. At the upper end of the scale we set off intentional conduct, i.e., conduct engaged in for the purpose of inflicting harm on another. At the opposite and lower end of the scale is a range of inadvertent conduct which we call negligence. Between these two extremes the law has created still another category which is described variously as reckless, willful, or wanton conduct. See 2 Restatement, Torts, § 500. This latter category is justified as an area of fault distinct from negligence on the ground that it involves a mental state in which the actor intentionally does an act with knowledge

(sometimes implied) that there is a strong probability that serious harm will be inflicted on another. It is distinguishable from intentional conduct on the ground that the latter requires an intent to inflict the harm, whereas reckless conduct involves only an act done with indifference as to whether harm will or will not result.

The classification has certain weaknesses. For example, it assumes that negligence does not also involve a mental state; an assumption not universally accepted. Edgerton, Negligence, Inadvertence and Indifference; The Relation of Mental States to Negligence, 39 Harv L Rev 849 (1926). The classification is further weakened by the acceptance of the view that the state of mind required in reckless conduct can be implied or presumed; one engages in reckless conduct if he intentionally does an act *"knowing or having reason to know of facts which would lead a reasonable man to realize"* that his conduct very probably will result in substantial harm. 2 Restatement, Torts, § 500.

But in spite of these possible objections the classification has been found useful in the practical administration of justice. It should be noted that there is no place in the plan for gross negligence. This is so because the law has not been able to identify it for practical purposes as a separate form of conduct. The effort on the part of some courts to establish gross negligence as a separate category has left its wound on our law. 2 Harper and James, The Law of Torts, § 16.13; Prosser, The Law of Torts (2nd ed) 149; Salmond on the Law of Torts (11th ed) 511; Elliott, Degrees of Negligence, 6 So Cal L Rev 91, 143 (1933); Green, High Care and Gross Negligence, 23 Ill L Rev 4, 17-19 (1928). The effort can be seen in the cases involving guest statutes similar to our own. We turn

now to a consideration of those cases because they help us along to the solution of the problem which we face in the present case.

The legislative policy to limit the guest's recovery to cases of intentional, willful, wanton or reckless conduct (or intoxication) is clearly expressed in some of the statutes. See 2 Harper and James, p 951, listing Alabama, California, Colorado, Delaware, Idaho, Illinois, Indiana, Iowa, Ohio, South Dakota, Texas, Utah and Washington. In some of the above states the guest statutes originally included gross negligence but this term was subsequently eliminated by amendment.

In several states where the guest statute contains the words "gross negligence or willful and wanton misconduct," it is expressly held that gross negligence is to be regarded as synonymous with willful and wanton misconduct and the latter type of culpability is required for recovery under the statute. *Fishback v. Yale*, 85 So2d 142 (Fla 1955); *Cormier v. Williams*, 148 Fla 201, 4 So2d 525 (1941); *Johnson v. Huskey*, 350 P2d 14 (Kan 1960); *Stout v. Gallemore*, 138 Kan 385, 26 P2d 573 (1933); *Peyton v. Delnay*, 348 Mich 238, 83 NW2d 204 (1957); *Olszewski v. Dibrizio*, 281 Mich 423, 275 NW 194 (1937); *Findlay v. Davis*, 263 Mich 179, 248 NW 588 (1933); *Melby v. Anderson*, 64 S D 249, 266 NW 135 (1936). See *Posey v. Krogh*, 65 N D 490, 259 NW 757 (1934).

On the other hand, similar statutory language has been interpreted to describe gross negligence and willful and wanton misconduct as separate types of fault. *Mitchell v. Walters*, 55 Wyo 317, 100 P2d 102 (1940).

The struggle to find a workable definition in the interpretation of statutes of this character is evident in the cases from other jurisdictions. The Florida cases

illustrate this most clearly. There the court first held that the word "or" in the term "gross negligence or willful and wanton misconduct" was used as a conjunction. *O'Reilly v. Sattler*, 141 Fla 770, 193 So 817 (1940). Then in *Jackson v. Edwards*, 144 Fla. 187, 197 So 833 (1940) it was held that "or" was to be read as a disjunction and that gross negligence and willful and wanton misconduct were two different types of fault. Finally, in *Cormier v. Williams*, supra, the court returned to its original position treating gross negligence and willful and wanton misconduct as synonymous. The final position taken by the Florida court was presaged in a dissenting opinion by Mr. Justice Buford in *Jackson v. Edwards*, 144 Fla 187, 197 So 833, 839, where he said:

> "I am of the opinion that by the enactment of the statute, supra, the legislature intended to limit the right of recovery by a non-paying guest to injuries sustained by reason of the *willful* and *wanton* misconduct of the owner or operator of the automobile in which such guest may receive injuries and I construe the words 'gross negligence' and the words 'willful and wanton' as used in the statute to have one and the same meaning. That, as used, the phrases mean either an actual or a constructive intent to injure."

In *McMillan v. Nelson*, 149 Fla 334, 5 So2d 867, 870 (1942) the statute was construed to cover conduct of such a nature that the operator of the automobile "would know, or should know, that by doing the act in the manner and at the time alleged he placed others in danger of injury." *Brown v. Roach*, 67 So2d 201 (Fla 1953) ; *De Wald v. Quarnstrom*, 60 So2d 919 (Fla 1952) ; *Dexter v. Green*, 55 So2d 548 (Fla 1951). See, Note, 4 Fla L Rev 79 (1951).

Michigan, with a guest statute identical with that

in Florida, has reached the same conclusion. In *Finkler v. Zimmer*, 258 Mich 336, 241 NW 851, 852 (1932), the court said: "Gross negligence does not mean great, bad, or much negligence," but means willfulness, wantonness or recklessness. *Peyton v. Delnay*, supra; *Titus v. Lonergan*, 322 Mich 112, 33 NW2d 685 (1948); *Breckenridge v. Arms*, 279 Mich 384, 272 NW 716 (1937).

South Dakota's guest statute was similar to the Michigan statute. In interpreting its statute the court, in *Melby v. Anderson*, 64 S D 249, 254, 266 NW 135 (1936), said:

"* * * This statute was taken from the law of Michigan, and will be construed and interpreted in the light of the Michigan decisions relating to it before our Legislature adopted it. Under those decisions, the words 'gross negligence' are, for practical purposes, substantially synonymous with the phrase 'wilful and wanton misconduct.' Willful and wanton misconduct (and gross negligence as it is employed in this statute) means something more than negligence. They describe conduct which transcends negligence and is different in kind and characteristics. They describe conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong. To bring the conduct of the defendant within the prohibition of this statute the jury must find as a fact that defendant intentionally did something in the operation of a motor vehicle which he should not have done or intentionally failed to do something which he should have done under such circumstances that it can be said that he consciously realized that his conduct would in all probability (as distinguished from possibly) produce the precise result which it did produce and would bring harm to the plaintiff."

The court relied upon the Michigan cases interpreting

a similar statute. The South Dakota court noted that the same result was reached in Kansas. The Kansas statute permitted recovery only for "gross and wanton negligence" of the operator of the vehicle. In *Stout v. Gallemore*, 138 Kan 385, 26 P2d 573, 577 (1933) the court said:

"\* \* \* In what sense did the Legislature use the words 'gross and wanton negligence' in the statute under consideration (R. S. Supp. 1931 8-122b)? We are forced to the conclusion the words are used in the sense of wantonness as distinct from negligence, as that distinction is made in former decisions of this court, notably Railway Co. v. Baker and allied cases, supra. With the three classes of conduct furnishing ground for liability when injury results—negligence, wantonness, willful injury—and with the purpose of the Legislature to relieve operators of automobiles from some liability to guests, the statute would be ineffective to accomplish its purposes if it did not relieve from liability for negligence. The statute would be ineffective also if the liability from which it relieved operators of automobiles were re-established by the use of exaggerated terms to describe negligence."

See also *Johnson v. Huskey*, supra; *Hickert v. Wright*, 182 Kan 100, 319 P2d 152 (1957); *Sayre v. Malcom*, 139 Kan 378, 31 P2d 8 (1934).

In Vermont the guest statute includes the phrase "gross or willful negligence." This is construed to mean conduct on the part of the operator showing "an indifference to his duty to his guest or an utter forgetfulness of the latter's safety." *Powers v. Lackey*, 109 Vt 505, 1 A2d 693, 694 (1938); *Abel v. Salebra*, 115 Vt 336, 61 A2d 605 (1948); *Barrows v. Powell*, 113 Vt 109, 29 A2d 708 (1943); Cf., *Kerin v. Coates*, 112 Vt 466, 28 A2d 382 (1942); *Sorrell v. White*, 103 Vt 277, 153 A 359 (1931).

In Wyoming the guest statute which was adopted from Michigan also contains the language "gross negligence or willful and wanton misconduct." The Wyoming court has refused to adopt the Michigan court's interpretation of a similar statute and attempts to distinguish gross negligence and willful and wanton misconduct. In *Mitchell v. Walters*, 55 Wyo 317, 100 P2d 102, 107 (1940) the court said:

> " '* * * Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a prudent man. But it falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure.' " [Quoted from *Shaw, Adm'r v. Moore*, 104 Vt 529, 162 A 373, 374, 86 ALR 1139].

The court accepted the following definition of gross negligence stated by Chief Justice Rugg in *Altman v. Aronson*, 231 Mass 588, 121 NE 505, 506, 4 ALR 1185 (1919):

> "* * * 'Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. But it is something less than the willful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence, or which renders a defendant in rightful possession of real estate liable to a trespasser whom he has injured. It falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to

have a tendency to injure. This definition does not possess the exactness of a mathematical demonstration, but it is what the law now affords.'" *Mitchell v. Walters*, 100 P2d at 107.

But it has been pointed out that although Massachusetts attempts to distinguish gross negligence from willful and wanton misconduct, the definition of gross negligence is applied by the court in such a way that the conduct necessary to permit recovery is essentially the same as that described as willfulness and wantonness under the Michigan guest statute. Note, 35 Mich L Rev 804 (1937). To illustrate this point reference is made to the language in *Lynch v. Springfield Safe Deposit & Trust Co.*, 294 Mass 170, 200 NE 914, 915 (1936):

> "There is no evidence of deliberate inattention, or of voluntary incurring of obvious risk, or of impatience of reasonable restraint, or of persistence in a palpably negligent course of conduct over an appreciable period of time. These are some of the more common indicia of gross negligence."

This catalog of instances all relate to the actor's state of mind which is the factor emphasized in distinguishing negligence from reckless or willful conduct.

Another author notes that "The cases under the Massachusetts rule of 'gross negligence' are hard to distinguish, on their facts, from the Connecticut cases in which liability is imposed for 'reckless disregard of the rights of others', interpreted as meaning wilful misconduct." Note, 18 Cornell L Q 621, 627, comparing *Ascher v. H. E. Friedman, Inc.*, 110 Conn 1, 147 A 263 (1929) and *Berman v. Berman*, 110 Conn 169, 147 A 568 (1929) with *Burke v. Cooke*, 246 Mass 518, 141 NE 585 (1923) and *Manning v. Simpson*, 261 Mass 494, 159 NE 440 (1928).

It would seem that in Massachusetts gross negligence and reckless conduct are one and the same in spite of the judicial declarations to the contrary. Since Wyoming has looked to Massachusetts for its guide it is not surprising to find that the Wyoming cases also seek the elements of recklessness in supplying the definition of gross negligence. See *Arnold v. Jennings*, 75 Wyo 463, 296 P2d 989 (1956); *Hawkins v. L. C. Jones Trucking Co.*, 68 Wyo 275, 232 P2d 1014 (1951).

The New Mexico and Connecticut statutes which make the driver's liability depend upon his intentional conduct or "his heedlessness or his reckless disregard of the rights of others" are interpreted to require proof of "wanton misconduct." General Statutes of Connecticut, 1930 Revision, § 1628①; New Mexico Statutes 1953, § 64-24-1.① *Grillo v. Bonauito*, 123 Conn 226, 193 A 730 (1937); *Vanderkruik v. Mitchell*, 118 Conn 625, 173 A 900 (1934); *Bordonaro v. Senk*, 109 Conn 428, 147 A 136 (1928); *De Blassie v. McCrory*, 60 N M 490, 292 P2d 786 (1956); *Fowler v. Franklin*, 58 N M 254, 270 P2d 389 (1954); *Smith v. Meadows*, 56 N M 242, 242 P2d 1006 (1952). In *Menzie v. Kalmonowitz*, 107 Conn 197, 139 A 698 (1927) it was said that "Wanton misconduct is more than negligence, more than gross negligence," but since the statute did not include gross negligence it was not necessary for the court to explain the distinction. *But see*, definitions in, *The State v. Carty*, 120 Conn 231, 180 A 287 (1935).

"[I]ntentional * * * heedlessness or * * * reckless disregard of the rights of others" (Vernon's Texas Civil Statutes, Article 6701b) was construed to mean the same as gross negligence in *Rogers v. Blake*, 150 Tex 373, 240 SW2d 1001 (1951). In discussing the meaning of gross negligence the court said, in *Gough*

---

① Repealed by Ch 270 of the Public Acts of 1937.

*v. Fincher,* 228 SW2d 541, 544 (Tex Civ App 1950), it "is such wanton, heedless and reckless misconduct on the part of the wrongdoer as to indicate a conscious indifference to consequences." *Thomas v. Southern Lumber Co.,* 181 SW2d 111 (Tex Civ App 1944).

The Wisconsin court has held that gross negligence consists of reckless conduct. In *Rideout v. Winnebago Traction Co.,* 123 Wis 297, 101 NW 672, 674 (1904), citing from *Bolin v. C., St. P., M. & O. Ry. Co.,* 108 Wis 333, 84 NW 446, 81 Am. State Rep. 911, a case not involving the guest statute, the court said:

> " 'Inadvertence, in some degree, is the distinguishing characteristic of negligence, while misconduct of a more reprehensible character, characterized by rashness, wantonness and recklessness of a person as regards the personal safety of another, has been designated by this court as gross negligence.' That involves 'a sufficient degree of intent at least to be inconsistent with inadvertence.' "

And in *Willard v. Chicago & N.W. Ry. Co.,* 150 Wis 234, 136 NW 646, 648 (1912), the court said:

> "\* \* \* It is the settled law of this state that, in order to constitute gross negligence, there must be either a willful intent to injure, or that reckless and wanton disregard of the rights and safety of another or of his property, and that willingness to inflict injury, which the law deems equivalent to an intent to injure. The element of inadvertence must be wanting."

For other discussions of gross negligence in Wisconsin see *State v. Whatley,* 210 Wis 157, 245 NW 93, 99 ALR 749 (1932); *Bentson v. Brown,* 191 Wis 460, 211 NW 132 (1926); *Bentson v. Brown,* 186 Wis 629, 203 NW 380, 38 ALR 1417 (1925); *Watermolen v. Fox*

*River Electric Railway & Power Co.*, 110 Wis 153, 85 NW 663 (1901).

South Carolina adopted the Connecticut guest statute and has followed the Connecticut decisions in construing the South Carolina statute. *Fulghum v. Bleakley*, 177 S C 286, 181 SE 30 (1935). South Carolina has continued to interpret its statute to restrict liability to cases where the injury has resulted from either intentional or reckless misconduct of the owner or operator. *Jackson v. Jackson*, 234 S C 291, 108 SE2d 86 (1959); *Benton v. Pellum*, 232 S C 26, 100 SE2d 534 (1957); *Brown v. Hill*, 228 S C 34, 88 SE2d 838 (1955).

Under the Virginia guest statute requiring proof of "gross negligence or wilful and wanton disregard of the safety" of the guest, it is held that "gross negligence is conduct which shows an utter disregard of prudence amounting to complete neglect of the safety of another," *Millard v. Cohen*, 187 Va 44, 46 SE2d 2, 5 (1948); that "heedless and reckless disregard of the rights" of the guest must be shown, *Woodrum v. Holland*, 185 Va 690, 40 SE2d 169 (1946). See also *Sibley v. Slayton*, 193 Va 470, 69 SE2d 466 (1952); *Reel v. Spencer*, 187 Va 530, 47 SE2d 359 (1948).

The Montana court, before that state had enacted a guest statute, defined gross negligence to mean "intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another," *Liston v. Reynolds,* 69 Mont 480, 223 P 507, 511 (1924). Since the enactment of its guest statute the Montana court has not deemed it necessary to further define gross negligence, other than to state that it is the failure to exercise slight care and that it is something more than ordinary negligence. *Westergard v. Peterson*, 117 Mont 550, 159 P2d

518 (1945); *Batchoff v. Craney*, 119 Mont 157, 172 P2d 308 (1946); *Blinn v. Hatton*, 112 Mont 219, 114 P2d 518 (1941); *Baatz v. Noble*, 105 Mont 59, 69 P2d 579 (1937); *Nangle v. Northern Pac. Ry. Co.*, 96 Mont 512, 32 P2d 11 (1934).

In an early case the North Dakota court quoted with approval a definition taken from a Michigan case, stating that gross negligence means "such a degree of recklessness as approaches wanton and willful misconduct." *Posey v. Krogh*, 65 N D 490, 259 NW 757, 762 (1934). More recently, in *Rokusek v. Bertsch*, 78 N D 420, 425, 50 NW2d 657 (1951), the North Dakota court has stated that:

> " 'Gross negligence' is, to all intents and purposes no care at all. It is the omission of the care which even the most inattentive or thoughtless seldom fail to take of their own concerns. It evinces a reckless temperament. It is a lack of care which is practically willful in its nature."

For similar definition see *Anderson v. Anderson*, 69 N D 229, 285 NW 294 (1939); *Rubbelke v. Jacobsen*, 66 N D 720, 268 NW 675 (1936).

In the first Nebraska guest case, *Morris v. Erskine*, 124 Neb 754, 248 NW 96 (1933), gross negligence was defined as great or excessive negligence, negligence in a very high degree, indicating the absence of even slight care in the performance of a duty. The Nebraska court has held fast to this definition, *O'Neill v. Henke*, 167 Neb 631, 94 NW2d 322 (1959), but the Nebraska cases taken as a whole seem to indicate that the elements required in order for a case to go to the jury in Nebraska are, in fact, elements of recklessness. Spikes, Gross Negligence Under the Guest Statute, 22 Neb L Rev 264, 275 (1943).

It appears then, from an appraisal of the cases in other jurisdictions, that where courts are faced with the problem of administering a statute similar to our own containing the term gross negligence along with other terms descriptive of aggravated fault, gross negligence is, for the most part, regarded not as a distinct type of misconduct but as another form of expressing the idea of serious culpability short of an actual intention to do harm.

It appears from many of these cases that even where the court purports to distinguish gross negligence from reckless, willful or wanton conduct, in the application of the definitions to the particular facts presented for decision, defendant's conduct is not regarded as grossly negligent unless it involves the type of fault generally treated as reckless or willful misconduct. This was clearly evident in the Massachusetts cases mentioned above. In commenting on a Massachusetts case indulging in this practice, the writer in 35 Mich L Rev 812 (1937) makes the following statement:

> "We should keep in mind that when the court approaches one of these cases it is looking for evidence, manifested in acts, of the state of mind of the defendant. We may conceive of a gradation of tortious acts, which result in personal injury from those clearly negligent on one end to those clearly intentional on the other. The fundamental difference between them is the state of mind of the defendant when he set in motion the factors which caused the injury. Somewhere along this scale we draw a line and say that on one side all the acts are negligent, on the other they are intentional. Now the court has drawn another line dividing the negligent acts into those of ordinary negligence, and those of gross negligence, and the acts which fall on one side or the other of that line

do so *because of the relative amount of deliberateness with which the defendant acted.*" (Emphasis supplied)

The treatment of gross negligence as a species of willful or reckless conduct is evident in our own cases. Thus in *Storla v. S., P. & S. Trans. Co.*, 136 Or 315, 297 P 367, 298 P 1065 (1931) an instruction to the jury which stated that "The term 'gross negligence' means the same as an utter recklessness or deliberate disregard of the rights of others" was upheld.

There is frequent reference in our cases to the defendant's "indifference" to the consequences of his act, or the "heedlessness" of the guest's safety, or the "disregard of the rights of others" and similar language of recklessness in describing the conduct which must be found before liability upon the driver can be imposed. Thus in *Rauch v. Stecklein*, 142 Or 286, 293, 294, 20 P2d 387 (1933) gross negligence was described as follows:

"* * * A motor-host who drives in a manner which indicates that he has no concern for consequences and an indifference to the rights of others is said to be guilty of gross negligence. The injury which he inflicts is not entirely inadvertent. His mental qualities, therefore, differ from those of another who is guilty of only ordinary negligence. The condition of mind of the driver who plunges on ahead, grossly negligent of the rights of others, may not be such that we can say that his tortious acts are wilful or wanton, but his mind is at least indifferent to the rights of others or displays those rash qualities exhibited by the foolhardy."

Similar language is found in *Younger v. Gallagher*, 145 Or 63, 26 P2d 783 (1933). See also, *Carlson v. Wagberg*, 183 Or 95, 190 P2d 926 (1948). In *Monner v. Starker*, 147 Or 118, 31 P2d 1109, 1110 (1934) it

was said that gross negligence "implies a disregard of consequences or a willingness to inflict injury, or, as it has been otherwise defined, it is the intentional failure to perform a manifest duty in a reckless or thoughtless disregard of the consequences as affecting the life or property of another. It is such a gross want of care and regard for the rights of others as to justify the presumption of willfulness or wantonness."

In *Lee v. Hoff*, 163 Or 374, 389, 97 P2d 715 (1940) the following instruction was approved:

"* * * 'Gross negligence is negligence that borders on recklessness or wantonness, and as applied to the operation of motor vehicles, implies a positive disregard of the rules of diligence and imports a recklessness or heedlessness of consequences. It is such a want of care that would raise an inference of conscious indifference of consequences.' * * * 'It is something more than inattention; in fact, it is the exhibition in the operation of a car of an I-don't-care-what-happens mental attitude.' "

In *Smith v. Williams*, 180 Or 626, 638, 178 P2d 710, 173 ALR 1220 (1947) the court quoted from a Michigan case to describe gross negligence:

" 'Gross negligence requires willful or wanton misconduct. [Citing Findlay v. Davis, supra] To constitute gross negligence in falling asleep while driving there must have been such prior warning of the likelihood of sleep that continuing to drive constitutes reckless disregard of consequences. There must be an appreciation of the danger of falling asleep or circumstances which would cause a reasonably prudent person to appreciate it and proceeding in defiance of results. It has been held that prior warning may be by way of having before gone to sleep or dozed off. [citing cases] Without discussing the distinction between ordinary and gross negligence, it was held in Coconower v. Stod-

dard, (Ind. App.) 182 N.E. 466, 467, a question for the jury where defendant had worked all day and driven most of the night without sleep.' "

Recklessness and gross negligence are treated as synonymous in *Turner, Adm'r. v. McCready et al.*, 190 Or 28, 54, 222 P2d 1010 (1950), where the court said, "it seems clear that under some circumstances the facts may present a jury question on the issue of gross negligence, although there is no *direct* evidence of a reckless state of mind manifested by warning given and ignored. * * * The element of recklessness may, under some circumstances, be inferred from evidence of the driver's conduct in the light of conditions and of what he must have known." See also, *Honeywell, Adm'x. v. Turner et al.*, 214 Or 700, 332 P2d 638 (1958); *Gantenbein v. Huckleberry*, 211 Or 605, 315 P2d 792 (1957); *Whang v. Hong*, 206 Or 125, 290 P2d 185, 291 P2d 720 (1955); *Keefer v. Givens*, 191 Or 611, 232 P2d 808 (1951); *Baird v. Boyer*, 187 Or 131, 210 P2d 118 (1949); *Gill v. Selling et al.*, 125 Or 587, 267 P 812, 58 ALR 1556 (1928).

Language in other Oregon cases describing gross negligence in terms of a mental state indicating indifference, disregard of consequences, and an "I don't care attitude" and the like, make it evident that as a matter of actual application of a standard of conduct to the particular facts, "gross negligence" and "reckless disregard of the rights of others" are one and the same thing. This has been the appraisal of our cases by others. Thus in 2 Harper and James, The Law of Torts, p 953, after observing that some courts "tend to assimilate 'gross negligence' to 'willful misconduct'," the authors state: "This is apparently the position of the Oregon courts. *Turner v. McCready*, 190 Or 28, 222 P2d 1010 (1950); *Smith v. Williams*,

180 Or 626, 178 P2d 710 (1947). The decisions do not, however, remove the matter from doubt. Note 33 Or L Rev 216 (1954)."

A possible explanation for this tendency of the courts to consciously or unwittingly amalgamate gross negligence with reckless and willful conduct was suggested in the concurring opinion in *Burghardt v. Olson,* 223 Or 155, 349 P2d 792, 801 (1960). Faced with the problem of drawing a line between ordinary negligence and inadvertent conduct of a more serious nature, but short of conduct evidencing a consciousness of risk and danger, the courts found that the task was impossible because there was no test or language or factors to guide the courts' hand in marking out the division between ordinary and gross negligence on the scale of "ascending and descending degrees of care," to borrow a phrase from Jones on Bailments. As a matter of practical administration of justice, it was necessary to move up the scale of fault where there could be found a distinguishing feature which could serve as a point of division in describing serious culpability and which could be used in testing the defendant's conduct in a particular case. That feature was the defendant's mental state—the fault that is associated with a consciousness of danger and an election to encounter it. Gross negligence thus becomes identical with recklessness.

Our cases are proof that we have gone through the same process. Upon a careful re-examination of the problem we can see no other acceptable solution. As long as we have the function of passing upon the question of whether there is a minimum of evidence of aggravated fault necessary to carry a case to the jury we must have some method of judging whether that minimum has been met. We have found it impossible

to make this judgment on the basis of a test which simply states that the negligence must be "great" or "more than" ordinary negligence. The division between gross negligence ("gross" is defined in Webster's Dictionary as "out of all measure, beyond allowance, not to be excused, flagrant," etc.) and reckless conduct is so vague and imperceptible, if it does exist, that we, as well as other courts, have been unable to find a mode of expression which can serve as a vehicle of communication to describe the difference. Recently it has been suggested (39 Or L Rev 164) that the choice between gross neglect and willful and wanton disregard of the safety of others "might well convey a decisively different sense of culpability to a jury." We doubt that. But even if it were true, we must admit that in spite of a conscientious effort to do so we have not been able to match that fine sense of intuition which the author attributes to the hypothetical jury.

■ We have found that amongst ourselves, most of us at least have a more or less common basis for judgment in the various fact situations that come to us if we examine the driver's conduct from the standpoint of his mental state. This has been expressed in our cases as an "I don't care" attitude. It is essentially a statement of the basic ingredient in reckless conduct. Once we move away from this anchor for our judgment we have no method of comparing our individal judicial sense of what constitutes sufficient fault to permit recovery by the guest. To be sure, if reckless and gross misconduct is defined, not only in terms of the driver's *actual* perception of danger, but in terms of the danger which a reasonable man would perceive (as was recognized in *Turner v. McCready,* supra), our test becomes an objective one and the actor's mental state is not in truth a factor. But even here the

test is in terms of a state of mind that may be inferred and this seems to be enough to afford us with a language which can serve as a rally point for judgment. If the acceptance of an objective test of fault throws us again on the uncharted sea of inadvertent conduct, the language of the test in terms of an implied state of mind at least reminds us that the driver's conduct must involve a very serious breach of duty before the guest will be allowed recovery, and we look for circumstances which "involve a high degree of manifest danger." 2 Harper and James, p 954.

It has been argued that our statute clearly expresses the legislative intent to classify gross negligence as a type of conduct separate and less culpable than reckless conduct. It is not impossible that the legislative draftsman labored under the misconception (not uncommon in 1929 when our guest statute was enacted) that negligence could be divided into degrees. If we should assume that the legislature intended to describe a degree of fault which the courts are unable to separate from reckless conduct, then the statute would have to be declared void for vagueness. The other choice is to reconcile the two expressions in the statute.

The statute as originally enacted (Oregon Laws 1927, ch 342) permitted no recovery whatsoever, irrespective of the character of defendant's fault. *Stewart v. Houk et al.*, 127 Or 589, 271 P 998, 272 P 893, 61 ALR 1236 (1928) declared the statute unconstitutional. The statute was then amended. It seems obvious that the language of the amended statute was intended to describe a type of conduct involving serious fault. Accidents caused by intentional conduct, reckless conduct, or as a result of intoxication were included. With these highly culpable types of conduct was included

"gross negligence." Certainly this was not to include
a type of conduct a "little more" culpable than ordinary
negligence; "gross" means "flagrant," "out of all meas-
ure" etc. (Webster's Dictionary). What, then, is a
type of conduct which, although serious to the point
of grossness, is nevertheless not reckless? One could
answer by saying that all of the statutory expressions
used were ejusdem generis and the legislative purpose
was not to differentiate but to supply a descriptive
list of types of conduct deemed serious enough to war-
rant recovery by the guest. So construed, it would be
immaterial that the expressions "gross negligence"
and "reckless disregard of the rights of others" had
a common meaning. If it is assumed that gross negli-
gence was intended to describe a type of conduct dif-
ferent from reckless conduct, there is still a basis upon
which the two expressions could be reconciled. "Reck-
less disregard of the rights of others" could be re-
garded as the type of conduct engaged in by the driver
when he actually perceives the danger and continues
his course of conduct. Gross negligence could then be
considered as describing conduct of the driver when
he does an act not knowing of the high degree of
manifest danger but under circumstances where he
should have known.

■ Either of these interpretations of the statute is
reasonable. Since we adopt the broad definition of
reckless conduct set out in 2 Restatement, Torts, § 500,
it makes no difference which of the interpretations is
adopted; the result is the same in either case. The
statute must be construed to give it a reasonable mean-
ing capable of judicial application if possible. We
think that it is possible and reasonable to construe
the statute as we have indicated above. We conclude,
therefore, that "gross negligence" as used in ORS

30.110 means reckless conduct. We accept the definition of reckless conduct stated in 2 Restatement, Torts, § 500.

 In nearly every guest case we are warned by plaintiff's counsel that we are not entitled to substitute our judgment for that of the jury. We understand our duty in that respect. But in the guest cases, as in all other cases, it is also our duty to exercise surveillance over the jury to prevent the rendition of verdicts not based upon sufficient evidence. We must, in some sense, substitute our judgment for that of the jury since we must decide in each case whether the plaintiff has produced sufficient evidence of defendant's culpability to meet the minimum requirements of proof. We do nothing differently in the guest cases than we do in other cases, including those in which the question is whether there is sufficient evidence of negligence to get to the jury. In attempting to arrive at the meaning of the language of the guest statute and to describe what we regard as the *type* of conduct which must be proved to warrant recovery, we purport only to state the elements which characterize actionable conduct. When we decide that reasonable men could regard defendant's conduct as falling within that definition we hold that the case may go to the jury, in spite of the fact that were we called upon to make a decision as jurors we might conclude from the evidence that defendant was not liable. If this is a sophistical distinction, we can only say that it is no more so in the guest cases than it is in other cases in which we and trial judges pass upon the sufficiency of evidence.

There is no doubt that when each of us as judges is called upon to make our individual judicial appraisal of conduct to determine whether it can reasonably be regarded as sufficiently culpable to bring

it within the statute, we make that judgment out of our own experiences and out of our own individual notions of danger, of its apparency in a particular setting, of foolhardiness, of permissible risk, and all of the other considerations which are relevant to culpability. This resort to experience and intuition is the judicial process in its most naked form. There is no way to avoid it unless we leave the entire matter of determining fault to the jury without judicial control. We have considered such an alternative and have rejected it, although we are cognizant that reasons can be advanced for adopting such an innovation. James, Tort Law in Midstream: Its Challenge to the Judicial Process, 8 Buffalo L Rev 315, 333 et seq. (1959). There is little doubt that the plaintiff guest would, on the whole, fare much better if the test of fault under the statute was left exclusively to the jury. Perhaps the jury is in a better position than the judiciary to translate the legislative standard set up in the guest statute and to make allowances for the changes which have occurred since the guest statute was enacted, particularly the prevalence of insurance coverage and the substitution of the theory of compensation for the theory of fault. 2 Harper and James, The Law of Torts, §§ 15.5, 16.15.

But we feel that if a change in policy is to be made it should come through the legislative process. The change in policy should be made only after the evidence relating to problems in host-guest litigation has been presented on both sides of the question, particularly with respect to the prevalence of collusion which is generally relied upon as the principal justification for the retention of the guest statutes. The evidence called for to make an intelligent judgment on this question is of the character more properly

examined in legislative hearings. It is for this reason, perhaps, that no other court has sought to interject its notions of policy into the administration of the statute to the extent of abdicating its function of judicial control over the jury.

As we have already indicated, there is no magic verbal formula which will describe with precision the difference between negligence and reckless conduct. The concept of fault itself is difficult to explain. To draw a line between one type of fault and another and to describe the difference is even more difficult. In fact, it has been asserted that such a distinction cannot be drawn; that the effort to distinguish negligence and reckless conduct is futile because it is an attempt "to separate two unknowns, neither of which is capable of being identified." Burrell, A New Approach to the Problem of Wilful and Wanton Misconduct, 1949 Ins L J 716, 717. But certainly there are differences in the gravity of fault and the fact that the difference cannot be precisely stated should not preclude us from administering a scheme of liability which is based upon the seriousness of the actor's misconduct.

We believe that the concept of recklessness, or more specifically, the "reckless disregard of the rights of others," can be roughly isolated by us and by the trial judges and juries in the administration of the guest statute. 2 Restatement, Torts, § 500 defines the term "reckless disregard of safety" as follows:

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but

also involves a high degre of probability that substantial harm will result to him."

(A special note calls attention to the fact that "The conduct described in this section is often called 'wanton or wilful misconduct' both in statutes and judicial opinions. On the other hand, this phrase is sometimes used by courts to refer to conduct intended to cause harm to another.")

The Restatement definition has been utilized in several states in stating the test for recklessness under their guest statutes. *De Loss v. Lewis*, 78 Cal App2d 223, 177 P2d 589 (1947); *Brock v. Waldron*, 127 Conn 79, 14 A2d 713 (1940); *Espeland v. Green*, 74 S D 484, 54 NW2d 465 (1952).

■ The concept of recklessness described in the Restatement definition is more simply stated in Prosser on Torts (2nd ed) p 151:

"\* \* \* 'Wantonness,' or 'recklessness,' \* \* \* means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."

As we have already indicated, we adopt the Restatement definition set out in § 500, 2 Restatement, Torts, as the definition of the terms "reckless disregard of the rights of others" and "gross negligence" in ORS 30.110.

Before applying the definition to the case at bar it may be helpful to consider more specifically the character of reckless conduct.

■ *The defendant must intentionally do the act or intentionally fail to do the act which involves the risk.* To constitute reckless conduct the defendant must in-

tend to act as he does in the face of a manifest danger. This is not to say that defendant engaging in reckless conduct intends to cause the harm; if he does intend to cause harm the act is classified as intentional rather than reckless conduct. Reckless conduct involves the choosing of a course of action which spells danger. As we point out later, the choice of action referred to here is not necessarily a real mental operation performed by the defendant but may be inferred from manifestly dangerous conduct.

■ *The defendant's conduct must involve a high degree of probability that harm will result.* The probability that harm will result from conduct is but another way of saying that the conduct is dangerous. Conduct is not reckless unless the probability that harm will result is strong. The conduct must "contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore, negligence." 2 Restatement, Torts, § 500, comment a. *Nichols v. Bresnahan*, 357 Mo 1126, 212 SW2d 570 (1948). The strong probability that harm will result is, of course, the probability which is or should be apparent to the defendant. The conduct "must involve an easily perceptible danger of substantial bodily harm or death and the chance that it will so result must be great." 2 Restatement, Torts, § 500, comment a. This principle has been stated and applied in numerous cases. See, for example, *Duff v. United States*, 171 F2d 846 (4th Cir 1949); *Brock v. Waldron*, 127 Conn 79, 14 A2d 713 (1940); *Brisboise v. Kansas City Public Service Co.*, 303 SW2d 619 (Mo 1957).

■ *It is not necessary that defendant actually know of the risk.* Very frequently the evidence shows that defendant took the risk with actual knowledge of the danger which his choice of action involves. But reck-

lessness can consist of conduct even less culpable than that of taking a known risk. If the danger is obvious, defendant will be presumed to have been aware of it. The definitions set out above include not only cases in which defendant knows that his conduct creates a strong probability of serious harm, but where he has reason to know of "facts which would lead any reasonable man to realize" that his conduct creates such a risk. (2 Restatement, Torts, § 500) or, as Prosser on Torts (2d ed) p 151 puts it, where the risk is "so obvious that he must be taken to have been aware of it." The principle is expressed in *Hebert v. Allen*, 241 Iowa 684, 41 NW2d 240, 243, as follows:

> "Neither court nor jury has any way to learn the mental attitude of the driver except by inference from his conduct. As said in Mischer v. Brogan, 223 Iowa 573, 581, 272 NW 645, 650: 'It is the actions and conduct * * * that measure the degree of care and determines whether or not one is proceeding * * * with a heedless disregard for * * * the rights of others.' "

■ "Recklessness" is, therefore, not necessarily a "state of mind" showing a consciousness of the danger and an election to encounter it; "recklessness" may be found in circumstances where the defendant did not appreciate the extreme risk but where any reasonable man would appreciate it. In other words, the standard is an objective one as it is in the case of negligence. *Alabam Freight Lines v. Phoenix Bakery, Inc.*, 64 Ariz 101, 166 P2d 816 (1946); *Cope v. Davison*, 30 Cal2d 193, 180 P2d 873, 171 ALR 667 (1947), dissenting opinion; *Dexter v. Green*, 55 So2d 548 (Fla 1951); *McMillan v. Nelson*, 149 Fla 334, 5 So2d 867 (1942); *Stephens v. Weigel*, 336 Ill App 36, 82 NE2d 697 (1948); *Hebert v. Allen*, supra. It follows that in the adjudicated cases expressions such as "reckless dis-

regard," "reckless state of mind," "conscious indifference," "conscious choice of action," are not to be taken to mean that there must be proof that defendant actually had such a state of mind; such expressions are appropriate to describe the hypothetical state of mind of the hypothetical reasonable man who, faced with the dangerous situation, nevertheless elected to encounter it. 2 Restatement, Torts, § 500, comment c explains the standard as follows:

> "*Appreciation of extent and gravity of risk.* In order that the actor's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct."

We recognized in *Turner v. McCready*, 190 Or 28, 54, 222 P2d 1010 (1950) that "The element of recklessness may, under some circumstances, be inferred from evidence of the driver's conduct in the light of conditions and of what he must have known." The inference to which reference is made in *Turner. v. McCready* must be drawn even though defendant himself did not in fact appreciate the danger. *Burrows v. Nash*, 199 Or 114, 259 P2d 106 (1953); *Brown v. Roach*, 67 So2d 201 (1953 Fla); 2 Harper and James, The Law of Torts, § 16.15, p 956.

In a number of our cases we have described reckless conduct in terms of an "I don't care" attitude. This is not to be interpreted to mean that defendant must, in fact, have such a state of mind; he may in fact be solicitous of the welfare of his guest and yet,

if he elects to take a course of action which reasonable persons would regard as highly dangerous, his conduct is reckless.

■ *Defendant's actual consciousness of the risk, although not necessary to prove reckless conduct, may be a significant factor in establishing his liability.* Frequently it is apparent from the circumstances of the case that the defendant is *actually* aware of the risk to which he is subjecting the guest by his conduct. This may be revealed by something he says or because he has been expressly warned of the danger by the guest. See *Melcher v. Adams*, 174 Or 75, 146 P2d 354 (1944); *Layman v. Heard*, 156 Or 94, 66 P2d 492 (1937). In such cases the defendant's actual knowledge of the danger and his election to encounter it is a factor to be considered in determining his liability under the guest statute. *Keefer v. Givens*, 191 Or 611, 631, 232 P2d 808, 817 (1951); 2 Harper and James, The Law of Torts, § 16.15, p 956. A strong implication that defendant was aware of the highly dangerous character of his conduct may be found from a persistent course of action indicating a willingness to subject others to harm. Note 37 Tex L Rev 358 (1958).

■ *Inadvertent conduct, without more, will not constitute recklessness.* Ordinarily, one who, through momentary thoughtlessness, relaxes his vigilance for the safety of others is not grossly negligent. *Brock v. Waldron*, supra; Prosser on Torts (2d ed) pp 151, 152. Or, as it is sometimes said, gross negligence consists of something more than inadvertence. *Keefer v. Givens*, supra.

In *Baird v. Boyer*, 187 Or 131, 210 P2d 118 (1949) it was said that conduct "attributable merely to thoughtlessness, inadvertence, or an error in judgment" does not amount to a reckless disregard of the

rights of others. See also, *Nehring v. Smith*, 243 Iowa 225, 49 NW2d 831 (1951); *Yanney v. Nemer*, 154 Neb 188, 47 NW2d 368 (1951); *People v. Davis*, 9 NYS2d 620 (1938); *Pfeiffer v. Green*, 102 SW2d 1077 (Tex Civ App 1937). However, the defendant, through knowledge of his physical condition, may have received prior warning that his vigilance might be relaxed involuntarily and thereby create an extreme risk to others. Thus it was held in *Smith v. Williams*, 180 Or 626, 178 P2d 710 (1947) that a defendant who, although realizing that he was sleepy, nevertheless continued to drive at a rate of fifty miles per hour could be regarded by the jury as guilty of reckless conduct. See also 28 ALR2d 12.

■ *A series or combination of negligent acts may constitute reckless conduct if taken together they indicate the so-called reckless state of mind.* In *Turner v. McCready*, supra, this court recognized that a combination of negligent acts may be sufficient to make out a case of gross negligence. See also, *Burrows v. Nash*, 199 Or 114, 259 P2d 110 (1953). The principle was more specifically delineated in *Gonzalez v. Curtis*, 217 Or 561, 563-4, 339 P2d 713 (1959) where the court said:

> "The plaintiff argues that the defendant-driver was guilty of several acts of ordinary negligence and, therefore, this combination of acts presents a jury question; citing *Burrows v. Nash*, supra. It should be pointed out, in this connection, that, although it may be shown that the occurrence was preceded by several acts of ordinary negligence, it is only when all of these acts combined with the existing circumstances show a foolhardy attitude on the part of the driver that gross negligence has been established. *Glascock v. Anderson*, 198 Or 499, 257 P2d 617; *Keefer v. Givens*, supra; *Turner v. McCready*, supra."

A similar expression of the rule is stated in 2 Harper and James, p 957, as follows:

> "It is generally agreed * * * that a combination of negligent acts may add up to a conclusion that the actor was engaged in willful misconduct."

A footnote adds this limitation, however:

> "* * * It would appear, however, that the negligent acts sought to be combined to produce liability must be related to a particular incident which, as an entirety, indicates recklessness * * *."

It is hoped that the foregoing analysis will clarify our position as to the meaning of the terms "gross negligence" and "reckless disregard of the rights of others" as used in ORS 30.110, and that in future guest cases it will serve as a guide not only for us but for the trial bench as well. We recognize that there is a separate and no less difficult problem of conveying the idea of recklessness to the jury. The principles stated here must be translated into language understandable to the average person. Trial judges have proved to be skillful and imaginative in framing instructions which convey the basic idea of the character of fault required under the statute. The common use of the expression "I don't care attitude" in instructions to convey the idea of consciousness of risk is an example of the trial judges' artfulness in reaching the jurors' minds. Our extended treatment of the meaning of reckless conduct was intended in part to make the task of framing clearer instructions somewhat easier.

We now consider the facts of the case at bar. The conduct of defendant which is relied upon to make out a case of gross negligence is summarized in plaintiff's brief as follows: "The defendant travelled a distance of approximately a quarter of a mile prior to making

a left turn, without ever paying any attention to on-coming traffic, and made the left turn without ever having looked to see if such turn could be made in safety. That in addition the defendant gave no signal whatsoever of his intention to make a left hand turn and as he testified the making of the left hand turn was his own idea. He further testified that if he had looked, he could have seen the approaching car with which he collided and that he had no explanation as to why he didn't see such approaching car. There was no traffic between the defendant and the approaching car to obstruct his view. In other words, in the present case we have a continuing act of negligence and failure to keep a lookout covering the period that the defendant travelled approximately one-quarter of a mile. We have a complete failure to keep any lookout and a failure to give any signal of his intention to make the left hand turn."

The gist of plaintiff's contention is that the jury could find gross negligence from the defendant's continuing act of negligence in failing to keep a lookout while travelling approximately a quarter of a mile, coupled with his failure to give any signal of his intention to make a left hand turn.

Plaintiff relies principally upon the cases of *Cockerham v. Potts*, 143 Or 80, 20 P2d 423 (1933); *Turner v. McCready*, supra, and *Keefer v. Givens*, supra. We have carefully re-examined *Cockerham v. Potts*, supra, and we are now of the opinion that the conclusion reached in that case was wrong. We do not think that there was sufficient evidence in that case from which the jury could have properly found that defendant acted in a reckless disregard of the rights of others. *Cockerham v. Potts* is, therefore, overruled.

*Turner v. McCready*, supra, and *Keefer v. Givens*,

supra, relied upon by the plaintiff, both reveal facts substantially different from those in the instant case; in both of these latter cases there was misconduct of an aggravated character. In the Turner case the defendant drove fifty miles an hour over a gravel road through dust so thick that a person riding in the front seat could not see the approaching vehicle until it was forty feet away. In the Keefer case the court pointed to a variety of facts which might well indicate to a jury the defendant's knowledge of extreme danger and a willingness to take the risk presented—driving in "needless haste" on wet pavement at sixty miles per hour with steamed-up windows, one windshield wiper inoperative, rain or mist falling, after leaving a tavern where he had drunk "a few beers."

In the instant case the plaintiff, in attempting to characterize defendant's conduct as reckless, emphasizes the fact that defendant travelled a distance of approximately a quarter of a mile prior to making a left turn without paying attention to oncoming traffic. By thus ascribing to defendant the duty during the entire course of his approach to the intersection of anticipating the danger of turning left in the face of oncoming traffic, plaintiff attempts to magnify the defendant's fault, suggesting in effect that defendant engaged in a continued and persistent course of action fraught with danger. But defendant's failure to observe the approach of oncoming vehicles would not constitute misconduct on the part of the defendant until he had reached a point near the intersection where the precaution of looking for oncoming vehicles would be taken by a reasonable person in the process of making a left turn under the circumstances. Prior to that time the presence of oncoming traffic would not suggest itself as a hazard to the defendant as he

proceeded in his own lane of traffic. Prior to that time there would be no more reason for defendant to observe the oncoming traffic than there would be for a person not intending to make a turn but to proceed in a direct line of travel in his own lane.

The failure to look up the highway for oncoming cars in preparing to make the turn at the intersection was negligence. But this, without more, could not be regarded by the jury as an instance of facing a manifest danger with indifference as to the guest's safety. The failure to keep a lookout for other traffic upon approaching an intersection can, under proper circumstances, be regarded as reckless conduct. But the danger which is waiting must be more manifest than it was in the present case. As defendant looked for the road sign to direct him to Salem there was nothing about the setting which would suggest to a reasonable person that anything more than the usual hazards of traffic were ahead of him; the defendant's conduct did not involve a high degree of probability that harm would result. Certainly, every intersection is a potential area of danger for those who move into it. But before the movement can be regarded as reckless there must be evidence of facts which were known to the defendant or so obvious that they would have been recognized by a reasonable person as involving a high probability of harm if the movement was continued. The evidence does not show such conduct here. The trial court, therefore, should have granted defendant's motion for a directed verdict.

Reversed.

On Respondent's Petition for a Rehearing.

Huston, Thomas & Johnson, Corvallis, for petition.

Lewelling & Gies, Salem, contra.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, O'CONNELL and GOODWIN, Justices.

O'CONNELL, J.

Plaintiff asserts that we were factually in error in stating that defendant was attempting to read the road sign prior to making the left turn to enter the road leading to Salem. There was no direct evidence to this effect and our conclusion was reached by way of inference from the testimony. The evidence discloses that as they approached the intersection, plaintiff and defendant were discussing the possibility of going to Salem rather than continue on to Corvallis. They had not reached a decision. At this time plaintiff was attempting to read the road sign "to see which way we should go." We assumed that both plaintiff and defendant were attempting to determine which route would lead them to Salem in the event that they should decide to go there. Assuming that this is not a reasonable inference from the testimony, we still think that there is not sufficient evidence to establish reckless conduct on the part of the defendant.

The other grounds urged for granting a rehearing are without merit.

Petition for rehearing denied.