Argued March 6, reversed March 26, petition for rehearing
denied April 29, 1969

# AMUNDSON, *Respondent, v.* HEDRICK, *Appellant.*

452 P2d 308

*Edward H. Warren,* Portland, argued the cause for appellant. With him on the briefs were Hershiser & Mitchell, Portland.

*Clifford B. Olsen,* Portland, argued the cause for respondent. With him on the brief were Franklin, Olsen, Bennett, Des Brisay & Jolles, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and HAMMOND, Justices.

HOLMAN, J.

This is an action to recover damages for personal injuries received in a one-vehicle automobile accident. Plaintiff was a guest passenger in a vehicle owned and operated by George Beal, who died as the result of injuries received in the same accident. The defendant is the administrator of Beal's estate. Defendant appealed from a judgment for plaintiff.

Because plaintiff was decedent's guest, plaintiff may recover only if decedent was grossly negligent. ORS 30.115(2). The first issue in the case is whether

there was evidence of gross negligence sufficient to justify the submission of the case to the jury. Plaintiff, decedent and a third party left Portland early in the morning for an ocean fishing trip out of the Port of Warrenton. They completed their fishing and commenced their return journey. The accident occurred late in the afternoon after they had traveled about 28 miles. The weather was dry and clear. The hard-surfaced portion of the highway was 22 feet wide with a 10-foot graveled shoulder on the right-hand side. The place of the accident was on a slight curve to the left on a mild downgrade. According to the other occupants of the vehicle, decedent was driving at a speed of about 55 miles per hour. Plaintiff said he looked at the speedometer and that was the speed. The posted speed at that point was 60 miles per hour. Decedent was cautioned to slow down prior to the curve, but either continued at the same speed or increased it immediately prior to the accident as if he had hit the accelerator instead of the brake. In rounding the curve the vehicle commenced to skid, went to the right onto the shoulder, back across the hard surface onto the wrong side of the road, weaved back and forth and went over an embankment on the right-hand side. Prior to leaving the road the vehicle left 43 feet of broad, irregular skid marks as if the vehicle were sliding sideways.

Another witness, a passenger in a second vehicle, testified that decedent's vehicle was going too fast but did not estimate the rate of speed in miles per hour. At the time she first saw the vehicle it was out of control.

■■ It is the court's opinion that decedent's actions, as a matter of law, did not constitute gross negligence. A speed of 55 miles per hour was not ex-

cessive considering the highway and traffic at the scene of the accident. A picture of the highway is in evidence and demonstrates no observable danger in driving the posted speed. We do not believe that the facts demonstrate that the decedent's course of conduct was such that it could be said he intentionally did an act which created a high degree of probability that serious harm would result. *Williamson v. McKenna*, 223 Or 366, 354 P2d 56 (1960). His only intentional act was his continued speed and it was not such as would normally cause loss of control. A mental attitude which is oblivious of consequences cannot be inferred from failure to heed a warning to slow down from a speed that is not excessive.

There is evidence that on the trip to the coast, decedent, who was 70 years of age, demonstrated that he was an extremely poor and highly erratic driver. One of the assignments of error is the trial court's admission of evidence concerning what occurred 12 hours previously on the trip to Warrenton. Presuming, as contended by plaintiff, that the evidence was admissible to show decedent's demonstrated lack of skill and thus his knowledge of his own ineptitude as a driver, it is the court's opinion that the evidence is still insufficient to support a cause of action for gross negligence. It is plaintiff's contention that decedent's disregard of the warning to slow down constituted gross negligence when such disregard is considered in the context of decedent's knowledge of his own limitations as a driver. The testimony concerning the trip to the coast was replete with examples of driving in the wrong lane, cutting across traffic lanes, driving past streets where decedent should have turned, taking wrong roads, nearly hitting a bridge abutment at 85 miles per hour and numerous other instances of ex-

cessive speed. Despite decedent's failures, it cannot be said that his knowledge of his own ineptitude was such that he could not reasonably expect to be able to drive a vehicle around a gently sweeping curve at a speed less than that allowed by the law without creating a high degree of probability of harm. The record is full of evidence of much higher speeds on the trip to the coast without any resulting gross loss of control of the vehicle.

██ There is an additional reason plaintiff cannot recover. Defendant pleaded contributory negligence and contends the court erred in not holding that plaintiff was guilty of negligence as a matter of law. If decedent demonstrated to himself his own incompetency as a driver to the extent that his continuance of his otherwise ordinary speed constituted gross negligence, he must necessarily have amply demonstrated to plaintiff the danger of riding with him. Plaintiff testified as follows concerning his state of mind prior to commencing the return trip to Portland with decedent:

"Q Were you concerned at all about driving back to Portland with Mr. Beal?
"A Yes, I was.

"Q What, if anything, did you do about it?
"A Well, I told him before we started out—we planned on—Terry (the other occupant) and I, if we should take the bus to go back.

"Q Why didn't you take the bus?
"A Huh?

"Q Why didn't you take the bus?
"A I felt kind of sorry, beings he drove out there, and I figured if he promised he would drive decent going back, why, we would have to take a chance.

"Q  Did you talk to him about driving back?
"A  Yes, I did.

"Q  What did you say?
"A  He said that he was going to take it easy. He had plenty of time now, and so he was going to take it easy."

Plaintiff is attempting to walk a non-existent line between decedent's knowledge of his own ineptitude and plaintiff's knowledge of the same thing. If decedent's inability to drive in an ordinary manner was so apparent to decedent that he was grossly negligent in not slowing down at the time of the accident, the danger of riding with decedent was equally apparent to plaintiff. If under such circumstances he was willing "to take a chance" he was negligent as a matter of law. Either decedent was not grossly negligent or, if he was, plaintiff was negligent in riding with him. If a passenger should have reason to know of the driver's inability to drive safely, the passenger will be barred if he then accepts a ride. *Zumwalt v. Lindland,* 239 Or 26, 35, 396 P2d 205 (1964), and cases there cited.

The judgment of the trial court is reversed.

SLOAN, J., dissenting.

If, as the majority assume, the evidence of decedent's driving from Portland to Warrenton was relevant and admissible, then it was for the jury to decide in what degree decedent Beal's ineptitude as a driver was responsible for the accident. That evidence suggests that Beal was a reckless driver whenever he was at the wheel. The majority rely on this evidence to find plaintiff guilty of contributory negligence but it is ignored on the basic issue of gross negligence.

It appears to me that it was also jury work to decide if plaintiff was justified in accepting Beal's promise to drive carefully on the way home. The test the jury must apply is what would a reasonably prudent man have done in these circumstances? In this case the answer to the question was doubtful enough to have permitted a jury answer.

The judgment should be affirmed.